**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re:<br><br>JASON DEAN CLARK,<br><br>    Debtor. | Case No. 21-16109 KHT<br>Chapter 7 |
| DAVID E. LEWIS, Chapter 7 Trustee,<br><br>    Plaintiff,<br><br>v.<br><br>LAW OFFICES OF AMBER FLORIO, PLLC, and COMMONWEALTH SERVICING GROUP, LLC,<br><br>    Defendants. | Adversary No. 22-01166 KHT |

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

THIS MATTER came before the Court on (1) the *Trustee's Motion for Summary Judgment* (the "Trustee's Motion," docket #80), filed by Plaintiff David E. Lewis, Chapter 7 Trustee (the "Trustee"), the Response thereto (docket #98), filed by Defendants Law Offices of Amber Florio, PLLC d/b/a Commonwealth Law Group ("Commonwealth Law") and Commonwealth Servicing Group, LLC ("Commonwealth Servicing"), and the Reply thereto (docket #99), filed by the Trustee; and (2) the *Defendants' Motion for Summary Judgment* (the "Defendants' Motion," docket #90), filed by Commonwealth Law and Commonwealth Servicing, and the Response thereto (docket #100), filed by the Trustee. The Court has reviewed the pleadings and the file, is advised in the premises, and hereby finds and concludes as follows:

**I.    BACKGROUND[1]**

Commonwealth Law, a Texas professional limited liability company, provides services to customers in multiple states. Its services include negotiating settlements of its clients' unsecured debts and defending clients in collection lawsuits. Commonwealth Servicing, a Massachusetts limited liability company, provides support services to Commonwealth Law's clients.

In September 2019, Debtor Jason Dean Clark ("Debtor"), a Colorado resident,

---

[1] The following facts are undisputed, unless otherwise indicated.

entered into an agreement with Commonwealth Law for services to be performed on Debtor's behalf, including negotiating with certain of Debtor's creditors to obtain a reduction in Debtor's outstanding debt with those creditors. Debtor enrolled five unsecured debts, totaling $55,153.00, in Commonwealth's program. The program obligated Debtor to make monthly deposits of $906.90 into a Dedicated Account, which deposits were accomplished by automatic draft.

While Debtor participated in Commonwealth's program, he deposited a total of $21,765.60 into the Dedicated Account. Those funds were ultimately disbursed as follows: $12,297.07 paid to Commonwealth Law (which in turn paid $10,683.07 of those funds to Commonwealth Servicing); $8,064.13 paid to the holders of the five enrolled debts; $491.75 in fees paid to the entity that maintained the Dedicated Account; and $912.65 refunded to Debtor. None of the settlements negotiated for the five enrolled debts was fully paid when Debtor filed his bankruptcy petition. Each of the five enrolled debts was listed on Debtor's Schedule E/F.

Trustee's Amended Complaint (docket #43) asserts causes of action against Commonwealth Law and Commonwealth Servicing based on 11 U.S.C. § 548(a)(1)(B)[2] and the Colorado Uniform Debt Management Services Act, Colo. Rev. Stat. § 5-19-201 ("CUDMSA"), which regulates providers of debt-management services and prohibits them from providing services to Colorado residents unless the providers are registered with the state. Commonwealth Law admits it performed services on Debtor's behalf and was not registered as a debt-management provider in Colorado. But, Commonwealth Law argues the services it provided were legal services, which are exempt from CUDMSA's definition of debt-management services. Commonwealth Servicing also admits it was not registered as a debt-management provider in Colorado, but it does not admit it provided debt-management services to Debtor. Instead, Commonwealth Servicing argues it provided only administrative support services.

The Trustee seeks summary judgment on his CUDMSA claim for relief, and the Defendants seek summary judgment on all three claims for relief asserted in the Trustee's Amended Complaint. The Court will discuss the parties' contentions further below.

## II. DISCUSSION

Summary judgment is appropriate if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), incorporated in adversary proceedings by Fed. R. Bankr. P. 7056; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). When applying this standard, the Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1212 (10th Cir. 2000) (citation omitted).

---

[2] Future references to "section" shall be to sections of the Bankruptcy Code, 11 U.S.C., unless otherwise indicated.

2

### A. CUDMSA.

Trustee's Motion seeks judgment as a matter of law that Commonwealth Law and Commonwealth Servicing violated CUDMSA. While Commonwealth Law did employ Colorado-licensed attorneys who were ostensibly responsible for services performed on Debtor's behalf, those attorneys had minimal contact with Debtor, received minimal compensation from Debtor, and, according to the Trustee, did not perform any substantive legal work on Debtor's behalf. Non-attorneys (whose employer, training, and supervision are disputed) contacted Debtor's creditors and negotiated settlements of Debtor's debts.

The Colorado Supreme Court addressed the scope of CUDMSA's legal services exception in *Coffman v. Williamson*, 348 P.3d 929 (Colo. 2015). In that case, the trial court decided Morgan Drexen, a company of nonlawyers that contracted with lawyers to provide legal software and support for debt-management services, fell within CUDMSA's legal services exception as a matter of law. The Colorado Supreme Court reversed, holding as a matter of law Morgan Drexen did not fall within the legal services exception, stating as follows:

> Morgan Drexen's actions place it outside the [parameters of Colo. R.P.C. 5.3, Responsibilities Regarding Nonlawyer Assistants]. While those parameters may be somewhat nebulous at the outer margins, the Rule clearly contemplates meaningful instruction and supervision [of nonlawyer assistants by lawyers]. Here, such instruction and supervision is conspicuously absent. Morgan Drexen requires its engagement counsel to execute carefully crafted contracts, which portray Morgan Drexen as subordinate to the law firms and acting under an attorney's supervision when it comes to legal matters. But the substance of their relationship reveals that "the tail wags the dog." Even the limited record before us now demonstrates that Morgan Drexen is not acting for the lawyer in rendition of the lawyer's professional services; rather, the lawyer is acting for Morgan Drexen.
>
> This court's function under Rule 56 is not to decide issues of fact but rather to determine "whether there is an issue of fact to be tried" and, if not, to resolve the question raised as a matter of law. *Morlan v. Durland Trust Co.*, 127 Colo. 5, 252 P.2d 98, 100 (1952) (internal quotation marks omitted). Exercising de novo review, we conclude that no genuine issue of fact exists as to the lack of supervision by engagement counsel over Morgan Drexen, despite Williamson's affidavit that he and Moore "direct and supervise the services [they] outsource to Morgan Drexen to perform" and "maintain full control over the course of the representation and exercise such control according to [their] own independent judgment." As detailed below, the overwhelming evidence in the record shows the opposite.
>
> A litigant "cannot avoid a summary disposition of his case" "by merely asserting a fact, without any evidence to support it." *Norton v. Dartmouth*

3

*Skis, Inc.*, 147 Colo. 436, 364 P.2d 866, 868 (Colo. 1961) (internal quotation marks omitted); *see also Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004) ("[U]nsupported, conclusory allegations . . . do not create a genuine issue of fact." (internal quotation marks omitted)); *Bernard v. Grp. Publ'g, Inc.*, 970 F.Supp.2d 1206, 1213 (D. Colo. 2013) (explaining that unsubstantiated, selfserving testimony in an affidavit does not create a genuine issue of material fact for summary judgment purposes where the record does not contain corroborating evidence). *See generally* C.R.C.P. 56(e) ("[A]n adverse party may not rest upon the mere allegations or denials of the opposing party's pleadings, but the opposing party's response by affidavits or otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial.").

The subordinate nature of the attorneys' relationship is reflected in the payment arrangement: engagement counsel receives minimal fees – as low as two dollars per month per debtor-client. It is also reflected in the documents that define and govern the relationship between Morgan Drexen and engagement counsel. For example, those documents reveal:

- Morgan Drexen "coordinates" the attorneys' efforts to negotiate with creditors on behalf of clients and to offer budget-planning services to clients.

- Morgan Drexen maintains "the right to change the method, manor [sic] of, and procedures for servicing clients from time-to-time" without the attorneys' approval.

- Morgan Drexen prepares advertisements to promote debt-management programs for engagement counsel, approves business names to be used by engagement counsel to ensure the names comply with applicable law, places advertisements in media, and performs screening and client intake services.

- Morgan Drexen provides engagement counsel with a representative "unsecured debt negotiation/settlement attorney/client fee agreement," sample correspondence for creditors (which it describes as "pre-approved" by an attorney), and sample correspondence for clients, including a letter offering to assist with legal representation if debtors are sued.

- Morgan Drexen specifically directs that both the creditors and the attorneys' clients contact Morgan Drexen alone.

- Sample settlement agreements in the record are on Morgan Drexen's letterhead.

- Morgan Drexen sets out a fee schedule that details what engagement counsel can charge if a client engages the attorney separately (including fees for preparation of pleadings, discovery responses, and summary judgment responses).

- If engagement counsel terminates its relationship with Morgan Drexen but maintains a debtor–client, it must pay Morgan Drexen $1100 per client.

In sum, the record shows that the attorneys do not provide meaningful instruction and supervision to Morgan Drexen. Thus, Morgan Drexen does not qualify for the legal services exemption.

*Id.* at 938-40 (footnotes omitted).

Here, Defendants have offered evidence the attorneys employed by Commonwealth Law are at least a little more involved in clients' matters than those employed by Morgan Drexen. Is that additional involvement enough to qualify Commonwealth's program for the legal services exception, or is this yet another example of an attempt "to evade compliance with [the UDMSA] by creating a sham relationship between its customers and an attorney"? UDMSA, § 2 cmt. 10 (2011), *quoted in Coffman v. Williamson*, 348 P.3d at 943 n.5. If the Court were to weigh the evidence at this time, the Court might conclude the additional involvement is not enough, and both Defendants violated CUDMSA. But, the Court cannot weigh the evidence on a motion for summary judgment. Instead, the Court can determine only whether each non-moving party has presented sufficient evidence that a rational factfinder could find in its favor. At this time, drawing inferences in favor of each non-moving party, the Court finds both Trustee and Defendants have met their burden of presenting sufficient evidence. The Court must therefore deny both the Trustee's Motion and the Defendants' Motion. Who employed, trained, and supervised the non-attorneys who negotiated settlements on Debtor's behalf are all disputed questions of fact that must be determined at trial.

### B. § 548(a)(1)(B).

Defendants' Motion seeks judgment as a matter of law that Commonwealth Law provided reasonably equivalent value for the payments it received from Debtor, and because the transfer is not avoidable as to Commonwealth Law, it is not avoidable as to Commonwealth Servicing, citing *In re Slack-Horner Foundries Co.*, 971 F.2d 577, 580 (10th Cir. 1992). The Court cannot so find. The value of Commonwealth Law's services is a disputed issue of material fact requiring this Court to deny summary judgment.

### III. CONCLUSION

For the reasons discussed above, the Court finds both parties' motions for summary judgment must be denied.

Accordingly,

IT IS HEREBY ORDERED that the Trustee's Motion and the Defendants' Motion are DENIED.

By separate order, the Court will set the matter for telephonic status and scheduling conference to set a trial date.

Dated February 24, 2025          BY THE COURT:

Kimberley H. Tyson
United States Bankruptcy Judge